The Supreme Court clearly established in Bullcumming and Melendez-Diaz that when analysts test a DNA profile for use against a defendant in a criminal case, introduction of the DNA report containing their statements, if certified, for use as evidence in chief through anyone other than them, violates Crawford. The facts of our case fall directly under those two cases and therefore we rely on clearly established Supreme Court precedent and the state court decision to the contrary was a contrary to those clearly established cases. In our case, the Appellate Division came up with a rule that a profile generated from the swab of a DNA sample, was not classified as a DNA sample. The court also said it did not stand alone link him to that crime. That is, those are words almost exactly from the Melendez-Diaz decision saying that rule is rejected by the Supreme Court. The court said that a rule that forensic testing of drugs is not testimonial because it is not facially accusatory and were culpatory only when taken together with other evidence linking the appellant to contraband, finds no support in the text of the Sixth Amendment. Justice O'Connor Correct me if I misheard you at the beginning, but I think you said that Melendez-Diaz, that this case like Melendez-Diaz and Bullcumming involved formalized certifications or certificates of lab analysis. Judge Goldberg That's right. Justice O'Connor I guess I'm pausing at that. Is that really the case here? Judge Goldberg Yes, it is. What happened in this case was that the exhibit that was put together by OCME involved a certification by OCME according to statute that the report was admissible directly in evidence. That's very similar to what Bullcumming said as a business record, but definitely admissible and certified and signed. The fact that analysts that created statements within that did not sign it does not render it any less a certified report. It cannot be that you can avoid the implications of the Confrontation Clause by having someone other than the analyst sign the report into evidence for use against the defendant and yet then not be allowed to cross-examine those  Justice Sotomayor Who should be required to be made available for cross-examination? Judge Goldberg All the analysts who did the testing, who manipulated the evidence itself. Justice Sotomayor Every single analyst? Judge Goldberg Every single analyst. And the reason for that is that Justice Sotomayor So what, so one analyst wouldn't be sufficient? One knowledgeable analyst wouldn't be sufficient? Judge Goldberg Perhaps, Your Honor, which is not our case. If there were an analyst who dogged the whole analytic process from start to finish and observed everything that happened, perhaps that analyst would be able to testify again. I'm not conceding that that's necessarily true. I could imagine that that would be lawful. That certainly was not our case. The fact that OCME chooses to use a bevy of analysts does not deprive the defendant of the right to cross-examine them. Justice Sotomayor If you have an analyst who has participated in part of that process, for example, let's say extraction, and is knowledgeable about the rest of the process, that person, in your view, it's not sufficient for that person to testify? Judge Goldberg What if the labeling was wrong and what was tested was incorrect? And the amicus brief points out that switches of samples occur. And so we need the person who did the labeling, we need the person who opened the packages, we need the person who did the controls. At any stage of the process, something could go wrong and the profile could be incorrect. Justice Sotomayor Your client had access to that evidence. Presumably he could have decided to call those witnesses himself. Judge Goldberg That's true, but that's compulsory process, Your Honor. It's a compulsory process for the defendant to be able to call witnesses in his favor. It is no substitute for the right to cross-examine witnesses that are called against him by the state. Justice O'Connor I guess I have some, and this may not be strictly relevant to the Confrontation Clause analysis, but I have some worry that creating incentives to structure labs in a way to centralize all the work in one lab analyst might produce more error, not less. And I guess this was discussed at the Supreme Court. Judge Goldberg With respect to the testing in this case, a buckle swab, there's no need for that. You can have the same situation that occurred here in 97 percent probably of cases, the cases plead out, there's no need for any, you know, there's no burden on the state to bring a bunch of people to court when there's no trial. For the few trials that occur, a buckle swab is easily retestable. And Justice Ginsburg, I believe, in Bulkhoming mentioned that. So there's really no problem. It's associated with, you know, allowing the defendant to confront a buckle swab test. Judge Goldberg Isn't this case, though, different from Williams because in Williams you had different labs, didn't you, performing the DNA profile testing? And no one from the lab that conducted the test on the defendant's blood testified at trial. Whereas here you've got Yanov who worked at the lab that did all of the DNA profile testing. And she, of course, wrote the report comparing the DNA profiles developed from the crime scene and the buckle swab of the defendant. Isn't that different from the Williams situation? Justice Breyer Distinction without a difference, Your Honor. Yanov had no direct knowledge. She was relying on the accuracy of people who worked for her office, but nonetheless that she had no view of. And we know that there have been times when there's a particular named OCME employee who the office had to retest 800 cases because she was doing things incorrectly. Yanov was not in a position to know that was occurring or was not occurring. As a result, she was similarly situated to the testifying analyst in Williams. I'd like to point out that even under Williams, we would actually win this case because the facts of this case are a subset of the facts of the primary purpose test as enunciated in Volkoming. Volkoming said that the primary purpose is for use at trial. The dissenters from Volkoming said in Williams, if the primary purpose is for use at trial against an arrested defendant, we have the arrested defendant. We have the evidence introduced at trial, unlike in Williams, and we have the certification by the OCME, unlike in Williams. In Williams, right? I guess your position . . . there are five justices in Williams who held that statements about a DNA profile developed for purposes of identifying the defendant is testimonial admission introduced to prove the truth of the matter asserted, correct? I'm not sure I understand. There were four judges in the plurality. You've got . . . and then you have Justice Thomas. Right. So there are five. Justice Thomas would have joined the dissent. Right. That's what my point is. Right. And that's because the rule that the dissenters were trying to impose, this narrowing of the Volkoming primary purpose rule, he did not agree with. He agreed with the four dissenters and with the two prior cases. I see that my time's up, if there's nothing else. Good morning, Your Honors. William Brannigan of the Office of Richard A. Brown, for the Respondent. May it please the Court. Your Honors, the Supreme Court has never held that the introduction of uncertified lab reports violates the Confrontation Clause. Why isn't the business record certification adequate to bring this within the Thomas opinion? Your Honor, again, this is a standard business record certification. It is saying these are true copies and that they were made in the regular course of business. Also, just one thing that I didn't note in my Respondent's brief, these business records came in under subsection A of 4518. That's the normal business record subsection. I think an appellant quoted from the subsections D and E, which pertain to DNA in paternity tests. That's separate from what happened here. Here, this is just somebody from the OCME saying that these are true copies. This is not somebody swearing to the facts they're in like you have in Volkoming and Melendez-Diaz. Can I quote from the appellate division's opinion? The appellate division states, and the second . . . the appellate division cited Williams for this proposition. Is that a correct application of the confrontation clause as articulated in Williams, in your view? Your Honor, first, where the appellate division was coming from was dealing with a very fractured opinion. The plurality in Williams can support that, meaning the necessary testimony was given a trial. The sworn to testimony was given a trial in Williams like the sworn to testimony. The second department's decision was reasonable under those circumstances. You've got Justice Thomas, who says in his concurrence that the DNA profile test that was introduced was introduced for its truth. That's a view that's shared by the four dissenting judges. If that's correct, and if I'm incorrect, please correct me, then didn't a majority of the court in Williams reject the appellate division's articulation of the law? No, Your Honor. I would look at it a different way. The case ultimately, Williams was suspected because there was no sworn to certification in that case. That's why you don't have a five-vote majority there. That five votes, meaning the idea that Thomas said this was hearsay brought in for its truth, and the fact that the four dissenters said that did not create a majority in that case. Otherwise, Williams would have gone a different way and we'd be in a different position here. The fact is that was a fractured opinion, and if you want to discern something from that opinion, what you can discern is that these were uncertified lab reports and that the only sworn to testimony was given a trial. So the second department couldn't rely on, and again, I should say something different. I should say that it was reasonable not to rely on a counting of five votes from basically someone who joined the majority in saying that these were admissible, and with the dissenters who said that it was not admissible. There was no reason for them to do so, and they were rational in saying that what was key was that the sworn testimony was given a trial and that the bugle swab analysis alone basically said nothing, and it did in this case. There was basically raw material that was produced. There was a set of lab notes. There was a set of graphs, and the testifying analysts relied on that as the four-vote plurality would support. Well, let's say that the DNA, this arguendo profile, was improperly admitted without the testimony of an analyst to perform the testing. I'm not saying that that's the case, but let's just say for the sake of argument, is there any other evidence admitted that tied the defendant to the crime scene? Your Honor, if you're asking whether the error here would have been harmless but for the sake of argument, I have to say no, that there were certainly, well, the defendant was caught through his DNA in each of these three cases. There was a match in the national database, and then that match arguably could have come in under some exception, but as far as what was admitted at trial, the key evidence was the match made through the testimony of the OCME analyst. Now, Justice Thomas, in his concurrence in Williams, writes about indicia of solemnity. Does the OCME report bear the indicia of solemnity, and if not, why not? Your Honor, it does not. The notes contained in the report were produced at various stages of the testing process, some were produced by computers. The only certification was produced later to say how the records were stored, maintained, and produced in the regular course of business. So there was no solemnized process as somebody sitting down saying, I'm swearing to the truth that this DNA is defendant's DNA. And there's no certification that I'm swearing to the truth that each step in this process, as I performed this step, I performed it accurately? That is correct, Your Honor. You say in your brief that at each of the individual stages, I think that the lab technicians who were performing each step, the quote is, they did a limited part of the lab protocols without the knowledge or the ability necessary to alter the results to render them inculpatory. Could you just explain what you meant by that to help me understand how this lab process works a little better? Okay. Well, practically, Your Honor, what happens is that the sample, so we have the recovered samples. In this case, we're really talking about the buccal slab as well as what was recovered. But at each stage, there's processing done to prepare the material to go into a machine. There's basically, I think, a laser function in the machine that will hit the sample and then produce basically what is the raw data that comes out of the computer. I think there's additional computer work done, but that is basically it. So the analysts who are producing this at each stage could have no possible knowledge of what the outcome of their processing would be. It's a question about how we apply Williams given the fractured nature of that opinion. If we were to determine that five justices of the court held that the DNA profile is testimonial evidence regulated by the Confrontation Clause, how do we apply Williams? Do we consider both the primary purpose for developing the profile and the indicia of solemnity or just the indicia of solemnity because Justice Thomas rejected the primary purpose test in his concurrence? How do we do this? Your Honor, again, first you use both. And I think the answer is looking at all the opinions you use both, meaning they have to have both of those things, meaning a primary purpose and the solemnity. So in this case, you can see that basically there is no solemnity, there is no primary purpose according to the plurality. So that's how the court should determine the nature of the issue goes towards the reasonable application. So one reasonable application would be to demand both that it's solemnized and that there is a primary purpose as discussed in Williams. So in this case, you would have to show both that the basically out-of-court statements were made by somebody who intended for their particular testimony to come into court and that that statement was formalized under this case. But the fact that it's fractured goes towards the state. The fact that it's fractured should lead to more deference to the state courts in interpreting this. So when you have a case like Williams that is almost identical in nature of the facts to the state court case and the state Thank you. And if the court has no further questions, the people rely on their briefs. Your Honors, the certification was such that the evidence could be introduced into evidence — I mean the statements could be introduced into evidence. It cannot be that the OCME was allowing statements to be introduced that it was taking no position on their accuracy or truthfulness. Clearly, by certifying the entire exhibit, the OCME was taking a position and it was certifying it. What are the indicia present in the report? I'm sorry? What are the indicia of solemnity present? Could you walk me through that? The certification was signed and it quoted the statute that allows it to be introduced as a business record into evidence. The business record, that allows it to fit within the business record exception for hearsay purposes. It's not a declaration that by the analysts themselves that they had taken particular steps and done them accurately. Well it isn't in that sense, but it cannot be that OCME is permitted to put a business record before the court and knowing that there are inaccuracies or that the people didn't follow the procedures they said they followed in those statements. That said, I don't think we even need the certification because if you look at the Williams plurality, they were embracing the rule that we relied on from Bull Cumming. There were eight judges that say in a targeted suspect case like ours where it's introduced for its truth, unlike Williams, that evidence must be subject to cross-examination. It's clearly established in three different cases. You can't really use Williams at all because as this court said in James, there's no discernible rule that comes from it. But you can look to it to discern what the court was saying as a whole and we know that Williams did not undo Bull Cumming and Melendez-Diaz. Thank you. Thank you both for your arguments. The court will reserve decision.